UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | ) ) ) ) ) ) |

CASE NO. 18-sw-6306-GPG

**Filed Under Restriction**

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under restriction from public access this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require GoDaddy.com, LLC, an Internet Service Provider located in Scottsdale, AZ, to disclose certain records and other information pertaining to the email domain account(s): bigoco.com. The records and other information to be disclosed are described in Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND

1.  GoDaddy.com, LLC is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require GoDaddy.com, LLC to disclose the items described in Part II of Attachment A, as these records pertain to a subscriber of electronic communications service and/or a remote computing service, and are not the contents of communications. *See* 18 U.S.C. § 2703(c)(2); 18 U.S.C. § 2703(c)(1).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The United States is investigating a scheme to defraud. The investigation concerns possible violations of, inter alia, 18 U.S.C. § 1343 (Fraud by wire).

5. By way of brief background, in December 2013, Cory Thompson and Kevin Brooks entered into a business partnership to form and operate DACK Energy Services, LLC (hereafter referred to as DACK). The primary function of the company was to provide roustabout services (i.e. maintenance, welding, miscellaneous repairs, and labor) for well sites owned by oil and gas companies in Colorado and surrounding states. DACK was registered as a limited liability company in the state of Colorado, based in Grand Junction, Colorado, and operated until approximately December 2015. During that time period Thompson served as the operating partner: managing work production, hiring employees, procuring required vehicles and equipment, and establishing contracts with oil and gas companies. He was responsible for the

submission of completed work invoices and field tickets to DACK accounting. Thompson submitted the invoices to Brooks, or to the DACK accountant, directly via email. Thompson used the email address of cory@dackenergy.com. Brooks used the email address of kbrooks@bigoco.com.

6. Through the investigation, it has been determined that Thompson submitted numerous invoices to DACK for which no work was provided. Thompson did not send the invoices to any of the oil and gas companies, requesting payment, but simply sent them to Brooks (and the DACK accountant) as a means of appearing that work was being performed. Furthermore in several instances, it was determined that not only was work not performed, Thompson had failed to establish any sort of business relationship at all with those companies. Received invoices were entered into the business accounting system as Accounts Receivables, qualifying them as liquid assets, and making it appear the company was producing and growing. However, only minimal work was performed, resulting in income that was not sufficient nor sustainable. Only with the false invoicing and inflated production, was Thompson able to dupe Brooks into believing that Thompson was performing as expected. Through this false and fraudulent scheme, Thompson convinced Brooks to provide additional capital investing.

7. Thompson's preferred means of communicating with Brooks was through email. In addition to the submission of invoices via email, Thompson used email as a means to portray his efforts to procure new contracts with oil and gas companies and to provide justification for expenses and additional funding. His email communications included explanations and descriptions of his alleged day-to-day work activities, to include extensive travel to Wyoming and Texas. However, evidence shows that he was often not working as portrayed and not traveling as claimed.

8. Thompson received a lucrative salary as part of the business venture. He also employed his adult son, Dylon, and his father, Larry. At least two of Dylon's friends were hired on by Thompson as employees, but were never required to perform work for DACK. Thompson's scheme included stringing Brooks along with fake work, all the while collecting his salary—as well as the paychecks paid to his son and friends—and enjoying a lavish lifestyle. Thompson purchased and enjoyed several luxuries, to include a ski boat, a pair of jet skis, and high-end vehicles for all family members.

9. Thompson's use of email communications was a means to carry out an elaborate scheme to defraud Brooks and others. The transmission of email messages, generally through different email exchange services and domain service providers, will likely confirm the use of wire communications affecting interstate commerce.

## REQUEST FOR ORDER

10. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that GoDaddy.com, LLC be directed to produce all items described in Part II of Attachment A to the proposed Order.

11. The United States further requests that the Order require GoDaddy.com, LLC not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order for a period of one year from the date of the Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order

commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Indeed, Brooks filed a civil lawsuit against Thompson related to this scheme. Thompson has failed to appear for those hearings and currently has a contempt warrant for his arrest. The investigation, to date, shows that Thompson has taken steps to avoid apprehension on that warrant and has fled to another state. Additionally, some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

12. The United States further requests that the Court order that this case, namely the application and any resulting order, be restricted from all public access until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good

cause to restrict these documents from public access because their premature disclosure may seriously jeopardize that investigation.

                                Respectfully submitted,

                                JASON R. DUNN
                                UNITED STATES ATTORNEY

                                *s/ Jeremy Chaffin*
                                Jeremy Chaffin
                                Assistant United States Attorney
                                205 N. 4th Street, Suite 400
                                Grand Junction, CO  81501
                                Telephone: 970-257-7113
                                Email: Jeremy.chaffin@usdoj.gov